IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LIFENET HEALTH,

                **Plaintiff,**

v.                                           Civil Action No. 2:13cv486

LIFECELL CORPORATION,

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant LifeCell Corp.'s ("Defendant" or "LifeCell")

Motion to Compel Full and Complete Discovery Responses, Doc. 46, and Plaintiff LifeNet

Health's ("Plaintiff" or "LifeNet") Motion to Compel Full and Complete Discovery Responses,

Doc. 74. The Court conducted a hearing via teleconference on August 7, 2014. Ruling from the

bench, the Court **GRANTED** the Motions in **PART**, and now issues this Opinion and Order

explaining its reasoning.

### I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

On September 6, 2013, Plaintiff filed a one-count Complaint, alleging that Defendant has

infringed U.S. Patent No. 6,569,200 ("the '200 Patent"). Doc. 1. Essentially, Plaintiff is alleging

that two of Defendant's products, AlloDerm RTM Ready to Use and Strattice Reconstructive

Tissue Matrix, infringe certain claims in the '200 Patent. Id. ¶¶ 24–30. Defendant filed its

Answer on November 22, 2013, denying it has infringed the '200 Patent, and additionally asserted

the affirmative defenses of non-infringement, invalidity, laches, failure to mark, limitations on

damages, prosecution history estoppel, patent exhaustion/implied license, and "other affirmative

defenses." Doc. 12.

On March 27, 2014, the Court entered its Rule 16(b) Scheduling Order. Doc. 29. The Court entered its claim construction order on July 16, 2014. Doc. 123. Plaintiff's discovery is due to be completed on August 25, 2014, and Defendant's is due by September 22. Doc. 29 at 2. The first expert reports were due on August 4, 2014. Id. at 1. Rebuttal expert reports are due on September 4. Id.

### a. Defendant's Motion

Defendant served its first set of interrogatories on February 28, 2014. Doc. 48-4. Plaintiff served its preliminary objections on March 17, and answered the interrogatories on April 18. Doc. 48-6. Plaintiff supplemented its responses on April 28. Doc. 48-7.

On April 2, 2014, Defendant served its second set of interrogatories. Doc. 48-8. Plaintiff objected to these on April 17. Doc. 48-9. Defendant served its second set of requests for production on March 20. Doc. 48-10. Plaintiff objected to the request on April 4. Doc. 48-11.

This discovery dispute centers around Plaintiff's alleged refusal to respond to some of these interrogatories and requests for production. Plaintiff has filed general and specific objections to the interrogatories, but has also provided limited responses. Defendant seeks more complete answers from Plaintiff, or in the case of Interrogatory 1, to "lock-in" Plaintiff's response date. The disputed interrogatories and request for production are reproduced below.

A. **Interrogatory 1:** For each claim of the Asserted Patent, describe in detail the alleged conception and reduction to practice of the claimed invention, including but not limited to the date(s) that you contend the conception and reduction to practice occurred, the persons involved, the contributions of each such person, and all documents and things supporting LifeNet's contentions as to conception and reduction to practice.

B. **Interrogatory 4:** Describe in detail, separately for each asserted claim of the Asserted Patent, all facts concerning any alleged secondary consideration of nonobviousness that LifeNet contends applies to the claim, including but not limited to any alleged commercial success, long-felt need, failure of others,

commercial acquiescence, unexpected results, skepticism, copying, or praise, and including for each allegedly applicable secondary consideration an identification of the documents that LifeNet alleges support its contention and the persons most knowledgeable about the facts supporting the contention.

C. **Interrogatory 5:** Identify all products made, used, sold, offered for sale or imported by, or under license from, LifeNet and/or any prior exclusive licensee or owner of the Asserted Patent that you contend are covered by or practice one or more claims of the Asserted Patent, including when such product was first made, used, sold or offered for sale in the United States, and describe in detail, separately for each limitation of each asserted claim, how each such product is covered by or practices such claim.

D. **Interrogatory 6:** For each product that LifeNet, or any licensee of LifeNet, marks or has marked with the Asserted Patent, identify the date on which marking began and the claims of the Asserted Patent that allegedly cover the product, and provide a chart describing in detail for each such claim, separately for each limitation of the claim, how the accused product or method allegedly meets each claim limitation, the documents and things that you contend support LifeNet's allegation that the limitation is met, and the names of all individuals who were involved in the decision to mark the products.

E. **Interrogatory 19:** To the extent that LifeNet contends that the claims of the '200 Patent are not invalid as anticipated under 35 U.S.C. § 102, invalid as obvious under 35 U.S.C. § 103, or invalid for failure to comply with one or more requirements of 35 U.S.C. § 112, for reasons set forth in LifeCell's Invalidity Contentions, state in detail the full factual basis for LifeNet's contentions separately to as to each asserted claim of the '200 patent.  As to each prior art reference or combination of prior art references that LifeCell has asserted anticipates or renders obvious the claims, the response should identify every claim limitation that LifeNet contends is not disclosed or satisfied by the reference or combination of references and explain the reasons why LifeNet contends it is not disclosed or satisfied, and explain any reasons why LifeNet contends that a combination of references would not have rendered the claims obvious to a person of ordinary skill in the art at the time of the alleged invention.

F. **Request for Production 75:** Five (5) pristine, unopened samples of each product that LifeNet marks or has marked with the Asserted Patent, complete with original packaging and accompanying documents of the commercial product. For products currently sold by LifeNet, the samples must be suitable for medical use and commercial sale in the United States, with a remaining shelf life of at least one year.

b. **Plaintiff's Motion**[1]

Plaintiff served its first set of interrogatories on March 6, 2014.   Doc. 76-2.   Defendant served its objections to these interrogatories on March 24.   Doc. 76-3.   Defendant served its responses to the interrogatories on April 18.   Doc. 76-8.   Defendant served supplemental responses on May 30.[2]   Doc. 78.

Plaintiff served its first set of requests for production on March 6, 2014.   Doc. 76-7.   Defendant served its objections to these requests on March 24.   Doc. 76-14.

This discovery dispute centers around Defendant's alleged refusal to respond to certain interrogatories and requests for production.   Defendant has filed general and specific objections to the interrogatories, but in some instances has also provided limited responses.   Plaintiff seeks more complete answers or more complete document production.   While Defendant's Motion addressed specific interrogatories and requests for production, Plaintiff's Motion was organized by topics as opposed to specific interrogatories and requests for production.[3]   The topics that Plaintiff seeks discovery on are:

1) Potentially infringing products
2) LifeCell-KCI due diligence documents
3) LifeCell's ESI obligations

Doc. 75 at 2.

## II.   LEGAL STANDARDS

The scope of discovery is broad, allowing parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"   Fed. R. Civ. P. 26(b)(1).

---

[1] While Plaintiff's Motion contained a large amount of material that was sealed, the Court is able to address the Motion in this Opinion and Order without revealing any sealed material.

[2] This document was filed under seal upon Plaintiff's Motion and the stipulated Protective Order entered in this case. Doc. 104.

[3] Plaintiff did provide the Court with copies of its interrogatories and requests for production, and they are reproduced throughout this Opinion and Order as appropriate.

The discovery needs to be "reasonably calculated to lead to the discovery of admissible evidence." Id. When responding to interrogatories, a party may answer by supplying business records. Fed. R. Civ. P. 33(d). A party seeking discovery may move the Court to compel answers to interrogatories and to produce items if the non-moving party fails to respond. Id. 37(a)(3)(B). An incomplete answer to an interrogatory is treated the same as a non-answer for purposes of a motion to compel. Id. 37(a)(4). However, prior to filing a motion to compel, the parties must meet and confer to attempt to resolve the dispute without the intervention of the Court. Id. 37(a)(1). Generally, "the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." Singletary v. Sterling Transport Co., 289 F.R.D. 237, 241 (E.D. Va. 2012).

### III.   ANALYSIS

The Court first considered Defendant's Motion, as it was filed first in time, and the proceeded to consider Plaintiff's Motion.[4]

### a.   Defendant's Motion

#### i.   Interrogatory 1

Defendant argued that Plaintiff should be bound by the date of conception and reduction to practice contained in Plaintiff's initial response (June 30, 1998) because this information has been in LifeNet's possession for years.[5]  Doc. 47 at 9.  Plaintiff argued that it requires third-party discovery to give a full and complete answer to this interrogatory because Federal Circuit case law states that conception is the "'formation in the mind of the inventor[] of a definite and permanent

---

[4] The parties were able to resolve some of the disputes through an additional meet and confer prior to the hearing. Thus, only the issues still at dispute were considered by the Court.
[5] Plaintiff later supplemented to change its answer to this Interrogatory to March 1998.

idea of the complete and operative invention.'"   Doc. 66 at 12 (quoting <u>Hybritech Inc. v.</u>

<u>Monoclonal Antibodies, Inc.</u>, 802 F.2d 1367, 1376 (Fed. Cir. 1986)).   Plaintiff stated that it will

supplement its answer as it progresses through discovery.  <u>Id.</u>  Defendant countered, however,

that Plaintiff has not taken any steps to begin this third-party discovery, and that even though the

living inventors no longer work for LifeNet, counsel for Plaintiff is representing one of the

inventors.  Doc. 68 at 6–7.

Defendants did not cite a single case in support of their arguments.[6]   Plaintiff's first

response was clearly lacking in that it provided minimal information.   However, in its

supplemental responses, Plaintiff has provided an estimated date, stated that it needs to conduct

third-party discovery, and stated that it will supplement its response once such discovery is

completed.  <u>See</u> <u>Donahay v. Palm Beach Tours & Transp., Inc.</u>, 242 F.R.D. 685, 688 (S.D. Fla.

2007) (holding that if a party does not have the records necessary to respond to an interrogatory, it

must state as such in its response).   Plaintiff has time to complete discovery per the Court's Rule

16(b) Order, and is bound to supplement its answer as it discovers new information.   Fed. R. Civ.

P. 26(e).  Accordingly, the Court **DENIED** Defendant's Motion seeking to lock-in the June 30,

1998 date.

### ii.  Interrogatories 5 & 6

Interrogatories 5 and 6 relate to claim charts that LifeCell seeks detailing how LifeNet's

own products practice the claims of the '200 patent, as well as which products are marked by the

'200 patent.  Doc. 47 at 17.  Defendant argued that they are relevant to the areas of pre-suit

damages as well as to secondary considerations of non-obviousness.   <u>Id.</u> at 18.   Plaintiff

---

[6] The one case they did cite, <u>Abbott Labs. v. Lupin Ltd.</u>, Civil Action No. 09-152, 2011 WL 1897322, at *5 (D. Del. May 19, 2011), addressed a supplementation filed sixteen weeks after the close of fact discovery.  Here, the motion was filed before the close of discovery.

countered that there is no legal support for Defendant's position that Plaintiff must supply claim charts for Plaintiff's own products.   Doc. 66 at 25.

Both parties argued that Lakewood Eng'g & Mfg. Co. v. Lasko Prods., Inc., No. 01-C-7867, 2003 WL 1220254 (N.D. Ill. Mar. 14, 2003), supports their position.   In Lakewood, the defendant served interrogatories requesting "Lakewood identify where each element of each claim of its patent is found on each of its products" and asking "Lakewood explain how each of its products correspond to each element of each claim of its patent."   Id. at *5.   While the defendant argued the request was "necessary to determine claim construction, validity and damages and whether Lakewood is entitled to lost profits," the Court concluded "that Lakewood need not perform a detailed mapping or infringement analysis of its own fan products to prove that its own fan products are covered by the patent, as such an endeavor is irrelevant to Lakewood's infringement case against Lasko."   Id.   Plaintiff argues this case forecloses Defendant's request, while Defendant argues that unlike in Lakewood, the discovery is relevant for pre-suit damages.

A sister court in the Fourth Circuit has required a plaintiff to provide claim charts if it wishes to use its own products to claim certain damages.   See Volumterics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys., Inc., No. 1:05cv955, 2011 WL 2600718, at *5 (M.D.N.C. June 29, 2011) ("[I]f VMI intends to offer any evidence at trial regarding an embodiment of any of the patents-in-suit by a VMI machine, then VMI must identify each version of each VMI machine that VMI contends incorporated any claimed inventions, and provide an identification and description in a claim chart (including references to applicable productions numbers of VMI's production or attach the documents, or in some way make identification of such documents clear and accessible) of how and where each patent claim limitation is found in each such version of the VMI

machine."). When the plaintiff failed to provide the necessary charts, the court precluded plaintiff from arguing that its products practice the claims of the patent. Id. at *9.

If the plaintiff, however, "unequivocally state[s] that it is not relying on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices any of the claimed inventions," interrogatories like defendant's are usually deemed to be overbroad. Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd., Civ. Action No. 05-1680, 2006 WL 5097356, at *1 (W.D. Pa. Oct. 11, 2006) (internal quotation marks omitted). There is no such disavowal here, and thus the information is relevant. Therefore, the Court **GRANTED** the Motion to Compel more complete answers to Interrogatories 5 & 6.

### iii. Interrogatories 4 & 19

In these interrogatories, Defendant is seeking to discover Plaintiff's position on the '200 Patent's validity or invalidity. Regarding Interrogatory 4, Defendant argued that Plaintiff's responses to this Interrogatory are incomplete and deficient. Defendant noted that the response includes "at least," and furthermore, that it "has provided no explanation at all as to why it believes each of the secondary considerations it identifies are relevant or what facts would support them." Doc. 47 at 10. Plaintiff argued that it has identified individuals that have relevant information, informed Defendant it will supplement its response further as necessary, a proper response requires discovery yet to be produced by Defendant, and this part of the Motion would usurp the Court's scheduling order. Doc. 66 at 13–14.

In Interrogatory 19, Defendant asks the Court to require Plaintiff to respond to its invalidity contentions. Plaintiff again argued, however, that this interrogatory is an improper attempt to invalidate the Court's scheduling order. Doc. 66 at 18. Plaintiff believes that it should not have to respond to this interrogatory prior to the timetable for expert reports contained in the scheduling

−8−

order.  Id.  Plaintiff also argued that the invalidity contentions are not specific enough.  Id. at 19.

Plaintiff further argued that the contentions were based on a hypothetical claim construction,

although this is now moot with the entry of the Court's Markman Order.  Defendant argued,

however, that such contentions are a routine part of patent litigation, and noted that Plaintiff has

already stated that it will respond to them in its answer to the Interrogatory.  Doc. 68 at 12.

Both parties cite caselaw from other jurisdictions in support of their arguments, as there is

a split of authority on this issue.  In Bonutti Skeletal Innovations LLC v. Linvatec Corp., No.

6:12cv1379, 2014 WL 186123, at *4 (M.D. Fla. Jan. 16, 2014), the court found that a similar

interrogatory was "premature, oppressive and overbroad" prior to the disclosure of expert

opinions.  See also Monsanto Co. v. E.I. Du Pont De Nemours and Co., No. 4:09cv686, 2012 WL

27936, at *2 (E.D. Mo. Jan. 5, 2012) (finding that invalidity contentions are contention

interrogatories that do not need to be fully answered until discovery is near completion); IP

Innovation L.L.C. v. Sharp Corp., 219 F.R.D. 427, 429–30 (N.D. Ill. 2003) (finding that plaintiff

was not entitled to compel defendant to provide its invalidity defenses until its expert reports were

due).

However, in Gardner v. Toyota Motor Corp., No. C08-0632, 2009 WL 8732016, at *1

(W.D. Was. May 6, 2009), the court found a similar interrogatory to be proper.  See also Quantum

Loyalty Sys., Inc. v. TPG Rewards, Inc., Civil Action No. 09-022, 2012 WL 726842, at *2–3 (D.

Del. Mar. 6, 2012) (requiring patentee to identify each patent limitation not found in prior art

identified by defendant); Duhn Oil Tool, Inc. v. Cooper Cameron Corp., No. 1:05cv01411, 2010

WL 716306, at *3 (E.D. Cal. Mar. 2, 2010) (requiring a patentee to respond to invalidity

contentions when defendant is asserting an invalidity defense); Transamerica Life Ins. Co. v.

Lincoln Nat. Life Ins. Co., No. C06-0110, 2007 WL 2790355, at *6 (N.D. Iowa Sep. 24, 2007)

–9–

(finding that nothing in the scheduling order "prohibits discovery on invalidity issues prior to the submission of the prior art statement.").

The Court agrees with the decisions finding these types of interrogatories should be answered prior to the close of discovery. The Federal Rules of Civil Procedure gives the Court the discretion to allow the party to respond to these interrogatories at the close of discovery. Fed. R. Civ. P. 33(a)(2). However, in the interests of judicial economy, and to potentially narrow the scope of the disputed issues, the Court **ORDERED** Plaintiff to respond to these interrogatories. They are relevant to the issues in the case, and the scheduling order does not preclude an earlier response. Therefore, the Court **GRANTED** the Motion to Compel answers to these interrogatories.

### iv. Request for Production 75

Because the Court ordered Plaintiff to answer Interrogatory 5, Defendant informed the Court that it no longer required samples of Plaintiff's product for testing. Thus, the Court **DENIED** the Motion to Compel production as MOOT.

### b. Plaintiff's Motion

### i. Information Regarding Additional Products

Plaintiff moved the Court to compel Defendants to provide information regarding potentially infringing products not identified in the Complaint. Defendant argued, however, that Plaintiff was engaging in an impermissible fishing expedition.

"Plaintiffs are not entitled to discovery that is only relevant to unaccused products or claims that have been dismissed from a case." Apotex, Inc. v. Mylan Pharms., Inc., No. 12-60704-CIV, 2013 WL 8184264, at *4 (S.D. Fla. June 4, 2013) (citing Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1327 (Fed. Cir. 1990)). Thus, discovery can be used "to assist a

party to prove a claim it reasonably believes to be viable <u>without discovery</u>, not to find out if it has any basis for a claim." <u>Micro Motion</u>, 894 F.2d at 1327. Just because "the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." <u>Id.</u> However, if the discovery designed at unaccused products is also relevant to accused products, than it is generally permissible. <u>Apotex,</u> 2013 WL 8184262, at *4.

Thus, the critical link is the <u>nexus</u> of any unidentified products with the patent at issue, which concerns soft tissue grafts. The definitions at issue seeking unidentified products are limited to soft tissue products.[7] Accordingly, the Court **GRANTED** Plaintiff's Motion to Compel more complete responses applicable to unidentified products.

### ii. Due Diligence Documents

Plaintiff's Request for Production 34 asks for:

> All documents, electronically stored information, and things LifeCell exchanged in due diligence with any Person that was a Third Party at the time of the exchange from 2006 to the present.

Defendant lodged numerous objections to this request. Plaintiff argued that the information leading up to LifeCell's 2008 acquisition by KCI is relevant on the topics of "LifeCell's finances at the time, technical issues, market analyses, and information regarding patents." Doc. 75 at 26.

Defendant argued that the request is overbroad, seeking documents not just from KCI, but any third-party, and requests any due diligence documents, and is not just limited to the KCI acquisition. Doc. 99 at 17. However, at the hearing, Plaintiff stated it was limiting its request to

---

[7] LifeNet interrogatories defined "Ready to Use Soft Tissue Product" as "any soft tissue product composed of, including, or derived from living tissue that is intended for implantation into a human and can be stored at room temperature." Doc. 76-2 at 3. "LifeCell Ready to Use Soft Tissue Product" is defined as "any Ready to Use Soft Tissue Product or component thereof, made (in whole or part), used, sold, offered for sale, promoted, marketed or publicized by or for LifeCell in the United States, or imported by or for LifeCell in the United States, including but not limited to Strattice Reconstructive Tissue Matrix ("Strattice") and Alloderm RTM Ready to Use ("AlloDerm RTU"). <u>Id.</u> These definitions closely track the properties of the accused products themselves, as the Court considered many of these technical details in preparing its <u>Markman</u> Order.

"documents that were created as part of the due diligence process for that transaction that were created by the defendant LifeCell, by the acquiring company, KCI, or by any third parties that either of them had retained as part of the due diligence process that went into that transaction." Doc. 127 at 30.

There is no doubt that the documents requested could provide relevant information, as it could reflect the financial success of the products or whether there were any foreseeable disputes concerning intellectual property. See Millennium Mktg. Grp., Ltd. v. Simonton Bldg. Prods., Inc., No. 08-2198-JWL-DJW, 2009 WL 2407723, at *11 (D. Kan. Aug. 4, 2009) (granting motion to compel request for production seeking "Merger documents that relate to the Am-Rad Flash-Free Technology.").

However, Defendant's arguments concerning privilege and work product objections are well founded, but it is unclear how they would apply to any specific document without knowing more about the documents, as LifeCell to date has not produced any documents responsive to this request. At least one court has held that transactional due diligence documents were protected by the attorney-client privilege. Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 308 (D.N.J. 2008). Thus, the Court **GRANTED** the Motion, but reserved ruling on any privilege issues until they arise during the course of the production of documents, and the Court has an opportunity to review any assertion of privilege. Furthermore, the Court **ORDERED** Defendant to clarify the corporate relationship between KCI and Defendant in answering the relevant interrogatories and responding to the requests for production.[8]

---

[8] While Defendant was originally a wholly-owned subsidiary of KCI, it is now apparently a sister corporation.

### iii. ESI Obligations

Finally, Plaintiff moved the Court to compel Defendant to provide more responsive ESI discovery, alleging that Defendant has been deficient in producing e-mails in accordance with the Court's ESI Order.  Plaintiff noted that fewer than 600 e-mails have been produced by Defendant. Doc. 75 at 11.  Defendant later agreed to search for "LifeNet" within five words of Plaintiff's three products.  Id. at 12.  Defendant argued, however, that it has complied with the ESI Order, that Plaintiff delayed in raising objections to Defendant's ESI production, and has failed to respond to the above-stated compromise offer.  Doc. 99 at 19–24.

The terms of the ESI Order are clear.  Each party was to identify six custodians most likely to have responsive ESI, and identify six proposed search terms for each custodian, by April 11. Doc. 39 at 3.  The parties were to meet and confer seven days upon the exchange of proposed custodians and terms to discuss any issues.  Id.  The Order was clear that "[i]ndiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction."  Id. at 4. Substantial completion of ESI obligations was to be completed by May 22.  Id.

Defendant timely submitted its proposed custodians and proposed search terms.  The custodians were identified in responsive interrogatories as persons likely to have discoverable information.  Plaintiff's suggestion that LifeCell be required to run a search for simply "LifeNet" runs afoul of the clear language of the ESI Order.  However, the Court also recognized that producing only 600 e-mails does appear to be a deficient response.  Accordingly, the Court **DENIED** the Motion to Compel more ESI at this time, and **ORDERED** that the parties continue to meet and confer to address a more appropriate scope of search terms and custodians for Defendant to utilize.

–13–

## IV.  CONCLUSION

For the reasons stated on the record and elaborated herein, the Court **GRANTED** the Motions in **Part**.  Docs. 46, 74.  All answers and productions are due within ten (10) days of the date of the hearing.

The Clerk is **REQUESTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: August 14, 2014