IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LIFENET HEALTH,

        Plaintiff,

v.                                      Civil Action No. 2:13cv486

LIFECELL CORPORATION,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant LifeCell Corporation's ("Defendant" or "LifeCell") Motion for a Finding of Laches under Rule 52(c). Doc. 417. A hearing was held on January 28, 2015. Ruling from the bench, the Court **DENIED** the Motion, and now issues this Opinion and Order explaining its reasoning in further detail.

### 1. PROCEDURAL HISTORY

On September 6, 2013, Plaintiff LifeNet Health ("Plaintiff" or "LifeNet") filed a one-count Complaint, alleging that Defendant infringed U.S. Patent No. 6,569,200 ("the '200 Patent"). Doc. 1. An eleven-day jury trial commenced on November 3, 2014. On November 18, 2014, the jury returned a verdict in favor of Plaintiff, finding that Defendant's Strattice, AlloDerm RTU, Conexa, and GraftJacket RTU products infringed claims 1, 2, 3, 4, 7, 8, and 10 of the '200 Patent, and that said claims were not invalid as anticipated, obvious, or for lack of enablement. Doc. 369. The jury found that Plaintiff was entitled to a lump sum royalty of $34,741,971. Id. On November 20, 2014, judgment was entered in that amount, in addition to Plaintiff's costs of action. Doc. 395.

On December 18, 2014, Defendant moved for a finding of laches under Federal Rule of Civil Procedure 52(c). Doc. 417. Plaintiff filed its opposition on January 2, 2015. Doc. 430.

Defendant filed its reply brief on January 8, 2015. Doc. 435.

## 2. **LEGAL STANDARD**

"If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). The judgment "must be supported by findings of fact and conclusions of law as required by Rule 52(a)." Id. Although this was a jury trial, because laches is an equitable remedy and cannot be considered by the jury, Rule 52(c) is the proper mechanism by which the Court can make a finding of laches. I/P Engine, Inc. v. AOL Inc., 915 F. Supp. 2d 736, 740 (E.D. Va. 2012). "The application of the defense of laches is committed to the sound discretion of the trial court." A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992).

## 3. **FINDINGS OF FACT**

In ruling on this Motion, the Court makes the following factual findings, which are supported by the testimony heard and exhibits admitted during the course of this trial.

On June 13, 2007, Katrina Ruth e-mailed a press-release announcing a new product by LifeCell to LifeNet employees JingSong Chen, Silvia Chen, Xiaofei Qin, and Dr. Lloyd Wolfinbarger, Jr. The body of the release read in its entirety:

> LifeCell Corp., a maker of tissue repair products, said Wednesday it received marketing clearance from the Food and Drug Administration for a tissue graft made from pigs.
>
> The news sent the shares up $6.96, or 31.2 percent, to $29.25 in premarket trading.
>
> The agency cleared LifeCell's Strattice tissue matrix, a soft tissue repair product that can be used in breast reconstruction and hernia repair. The product

complements the company's AlloDerm tissue repair product, which is derived from human skin.

"Commercialization of Strattice will allow us to expand our business into global markets, which was extremely difficult with our human-derived products," said Paul Thomas, LifeCell president and chief executive, in a statement.

The company plans to begin making Strattice available to surgeons on a limited basis later in the year, with a full commercial launch planned in early 2008.

LifeCell shares closed as $22.29 on Tuesday.

DTX-041.

At the time, Dr. Xiaofei Qin was a scientist at LifeNet. Tr. at 211:2–3. Starting in 2005, Dr. Qin was working on the DermACELL project, developing a decellularized human dermis allograft. Id. at 212:24–213:6. Dr. Qin knew that the DermACELL project was different from Strattice, which was made from pigs. Id. at 266:11–12. While she did not know when it was released, she recalled that Strattice was approved by the FDA; however, she had not personally seen the Strattice product, nor tested it. Id. at 268:8–19. During her work on the DermACELL project, however, she did look at Defendant's AlloDerm RTM product ("original AlloDerm").[1] Id. at 268:20–24. Dr. Qin's lab notebook is filled with examples where she compared the DermACELL product with original AlloDerm. See PTX-236. The lab notebook contains no mention of the Strattice product. Dr. Qin visited Defendant's website to view sizes of original AlloDerm, and the notebook contained a print-out from this webpage. Id. at LNH0240529–32. Original AlloDerm was a freeze-dried product. Tr. at 1336:6–9.

Dr. Lloyd Wolfinbarger, a listed inventor of the '200 patent, also was a recipient of that e-mail. At the time of the press release, he did not think of LifeNet and LifeCell as competitors

---

[1] One of the accused products in this case, AlloDerm RTU, derived from a non-infringing product, AlloDerm RTM. To minimize confusion, when necessary the Court will refer to AlloDerm RTM as "original AlloDerm."

and understood LifeCell to be focusing on freeze-drying technology. Wolfinbarger Dep. at 134:2–15.

The first sales of Strattice were in January 2008, but only twenty-five units were sold. PTX-026. Conexa, identical to Strattice, was first sold in October 2008. Id. Although sales started slowly, by the end of the year, Defendant managed to sell 6,026 units of Strattice and Conexa.

## 4. CONCLUSIONS OF LAW

Defendant's argument in this Motion was that the jury's damages award should be remitted to exclude damages for any pre-suit infringement because the doctrine of laches applies. Doc. 418 at 2.

"To prove laches, a defendant must show that 'the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and ... the delay resulted in material prejudice or injury to the defendant." Wanlass v. General Elec. Co., 148 F.3d 1334, 1337 (Fed. Cir. 1998) (quoting Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 773 (Fed. Cir. 1995)). The period of time is measured from "when the patentee has actual or constructive knowledge of the defendant's potentially infringing activities." Wanlass, 148 F.3d at 1337.

"A delay of more than six years raises a presumption that it is unreasonable, inexcusable, and prejudicial." Id. at 1337. If the presumption applies, the burden shifts to the plaintiff to "show that either the patentee's delay was reasonable or excusable under the circumstances or the defendant suffered neither economic nor evidentiary prejudice." Id.

Defendant's argument was solely based on the six year presumption, arguing that Plaintiff knew or should have known about the potential infringement of Strattice when it learned of the

FDA's approval of Strattice in June 2007. Doc. 418 at 3. Plaintiff argued that the press release announcing the FDA approval of Strattice was insufficient to place it on notice of potential infringement. Doc. 430 at 6–11.

The Court concluded that Plaintiff did not have actual notice of potentially infringing activities more than six years prior to filing this suit. The only evidence to show that LifeNet had knowledge of a potential claim regarding Strattice is the June 2007 press release, and the press release was insufficient to place LifeNet on actual notice of potential infringement. The press release does not contain any details about the features behind the Strattice product which were found to infringe the '200 patent. Dr. Wolfinbarger testified that he understood LifeCell to be working in a different area of technology than LifeNet was focusing on. Moreover, the press release compares Strattice to original AlloDerm, a freeze-dried product, with which Plaintiff was very familiar. However, Plaintiff has never alleged that original AlloDerm infringed the '200 patent, which claimed a ready-to-use product stored at room temperature. Thus, by comparing the product in the press release to a non-infringing product, the only inference from 2007 is that Defendant was releasing a freeze-dried product similar to original AlloDerm which utilized pig skin instead of human skin.

Defendant also argued that the press release, combined with publicly available information, including Dr. Qin's use of Defendant's website while working on the DermACELL project, provided constructive notice to Plaintiff. Doc. 418 at 4; Doc. 435 at 2–3.

"With respect to constructive knowledge, the Federal Circuit charges a patentee 'with making the inquiry that a diligent and reasonably prudent patentee would make to determine whether another device infringes his patent.'" I/P Engine, 915 F. Supp. 2d at 741 (quoting Odetics, Inc. v. Storage Tech. Corp., 919 F. Supp. 911, 917 (E.D. Va. 1996)).

> If a patentee knows of the existence of a product or device that (i) embodies technology similar to that for which he holds a patent and (ii) uses that similar technology to accomplish a similar objective, he has a duty to examine the product or device more closely to ascertain whether it infringes his patent. If he shirks his duty, he does so on peril of triggering the laches period and perhaps ultimately losing his right to recover damages for the infringement.

I/P Engine, 915 F. Supp. 2d at 741 (quoting Odetics, 919 F. Supp. at 918). Circumstances that trigger this duty to launch an inquiry include "pervasive, open, and notorious activities that a reasonable patentee would suspect were infringing." I/P Engine, 915 F. Supp. 2d at 742 (quoting Wanlass, 148 F.3d at 1338) (internal quotation marks omitted).

Examples of these "open and notorious activities" that trigger the duty to investigate include "'sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities[.]" I/P Engine, 915 F. Supp. 2d at 742 (quoting Wanlass, 148 F.3d at 1338). Constructive knowledge exists, even if the plaintiff is actually unaware of these activities, "'if these activities are sufficiently prevalent in the inventor's field of endeavor.'" I/P Engine, 915 F. Supp. 2d at 742 (quoting Wanlass, 148 F.3d at 1338).

In support of its argument that constructive knowledge does not apply in this case, Plaintiff cited to a case from the Southern District of New York, U.S. Philips Corp. v. ATI Techs., Inc., No. 05 Civ. 8176, 2008 WL 2073928 (S.D.N.Y. May 8, 2008). In ATI, the defendant based its laches argument for constructive notice on a press release announced on its website, which announced the launch of a new product using an inter-integrated circuit, which was covered by the patent-in-suit. Id. at *1. The ATI court found that the lone press release did "not amount to a *conspicuous activity of potential infringement.*" Id. at *3.

As Defendant correctly argued, in ATI there was no evidence that the press release was

actually seen by the plaintiff, as is the case here. Doc. 435 at 3 n.3. However, the Court still concluded that no evidence of conspicuous activities existed in 2007 such that the Plaintiff was on constructive notice of potentially infringing activities. In ATI, the press release announced that the defendant was using patented technology, while the press release here does not put Plaintiff on notice that its patent is implicated. Sales had not yet begun. While Defendant argued that Plaintiff could have discovered more information about the product, the product was not publicly available for Plaintiff to examine in 2007. See also Koninklijke Philips N.V. v. Zoll Medical Corp., Civil Action No. 10-11041, 2014 WL 2047878, at *8 (D. Mass. May 16, 2014) (similarly finding that press releases only generally describing a technology are not enough to establish constructive knowledge of potential infringement).

While this Court has not addressed the issue of a press release, in I/P Engine, Inc., defendant Google placed a description of its allegedly infringing technology on its Google Inside AdWords Blog. I/P Engine, Inc., 915 F. Supp. 2d at 744. The blog post described its ranking of advertisements in words that were similar to the language the plaintiff used in drafting its complaint. Id. at 744–45. Because the blog post described the technology, it was "the kind of marketing document" to put the patentee on notice of potential infringement. Id. at 745. Even though the plaintiff did not have actual notice of the blog post, the Court found constructive notice existed because Google's "publication of information concerning new advances in their search and ad serving technologies is the kind of 'prevalent' activity in the field of the [invention] that [the patentee] should have been aware of in determining whether to enforce their patents." Id. Unlike the blog post in I/P Engine, Inc., the press release here simply does not have the kind of information that would have placed Plaintiff on such notice that it should have undertaken an investigation into the Strattice product; the press release compared Strattice to a non-infringing

product. If the Court were to accept Defendant's position, then potentially any time a company announced FDA approval of a product, with only a generic description of the product, that company would be starting the laches clock.

Accordingly, the Court concluded that the presumption of laches does not apply in this case. Because Defendant advised the Court that it rested solely on the presumption of laches, the Court did not address the issue of unreasonable delay within the six year time frame, an issue upon which the defendant bears the burden of proof. Nor does the Court address the issue of prejudice.

### 5. CONCLUSION

For the reasons set forth above, the Court **DENIED** the Motion grounded upon laches.

The Clerk is **REQUESTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: February 4, 2015